# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Tasha Johnson,               )<br>                              )<br>            Plaintiff,        )<br>                              )     Civil Action No.: 4:10-cv-01222-JMC<br>      v.                      )<br>                              )     **OPINION AND ORDER**<br>Eric Holder, Attorney General,)<br>                              )<br>            Defendant.        )<br>_____) | |

This matter is before the court for a review of the Magistrate Judge's Report and Recommendation ("Report") [Dkt. No. 67]. Plaintiff Tasha Johnson ("Plaintiff") alleges she was subjected to a hostile work environment and sexual harassment by her supervisor, Virgil Hawkins ("Hawkins"), while employed at the Federal Correctional Institution Williamsburg ("FCI Williamsburg"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The Magistrate Judge's Report recommends that this court grant Defendant Eric Holder's ("Defendant") Motion for Summary Judgment [Dkt. No. 44]. The Magistrate Judge's report sets forth in detail the relevant facts and legal standards on this matter, which the court incorporates herein without a recitation. Upon review of the Report and the record in this case, the court grants Defendant's Motion for Summary Judgment [Dkt. No. 44].

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight. *Id.* The responsibility to make a final determination remains with this court. *Id.* This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the

1

court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S. C. § 636 (b)(1).

## DISCUSSION

As a preliminary matter, the court finds that many of Plaintiff's objections are unrelated to the dispositive portions of the Magistrate Judge's Report or merely restate facts and arguments presented in her Opposition to Defendant's Motion for Summary Judgment [Dkt. No. 50]. However, the court discerns two specific objections: 1) that the Magistrate Judge erred in finding that Plaintiff suffered no tangible employment action as a result of Hawkins's alleged sexual harassment and 2) that the Magistrate Judge erred in finding that Defendant presented a valid affirmative defense against Plaintiff's claim that Hawkins created a sexually hostile work environment.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Some courts have held that negative job references can constitute tangible employment actions. *See Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997) (finding that dissemination of a negative job reference given in retaliation for Plaintiff's EEOC complaint constituted an actionable employment decision); *Presley v. Pepperidge Farm, Inc.*, 356 F. Supp. 2d 109, 124-25 (D. Conn. 2005) (finding that a written negative job reference can qualify, as a matter of law, as a tangible employment action); *cf. Idusuyi v. State of Tennessee Dept. of Children's Services*, 30 F. App'x 398, 403 (6th Cir. 2002) ("If a superior who has made sexual advances is not part of the chain of command that evaluates and determines whether a candidate receives a promotion, that superior's transmission of truthful if unflattering

information does not constitute a tangible job detriment."). The United States Court of Appeals for the Fourth Circuit has recognized a related principle, though not in the context of a negative job reference, that "the harasser may use his or her discriminatory intent to set in motion a tangible employment action taken by someone else [and] [t]hat someone other than the harasser takes the tangible employment action does not change its but-for cause: discrimination in violation of Title VII." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 332 (4th Cir. 2012).

Plaintiff alleges that she was not hired for two positions at The Metropolitan Correctional Center in New York, ("MCC New York") because Hawkins gave her an unfavorable job reference during MCC New York's hiring process. The record shows that Hawkins only communicated with one official at MCC New York – Candace Johnson ("Ms. Johnson") the Educational Supervisor at MCC New York. *See* Candace Johnson Affidavit [Dkt. No. 44-28]. Ms. Johnson stated that she conducted a reference check with Hawkins, in which she posed a series of standard questions, including whether the supervisor knew of any disciplinary issues with the applicant and whether the supervisor would hire the applicant for the job. *Id*. at 6-7. Ms. Johnson stated that she did not recall how Hawkins responded to these questions,[1] but she did recall that there was nothing out of the ordinary about the call. As a result there is no actual evidence in the record that Hawkins gave Plaintiff a negative reference that resulted in Plaintiff not getting a job at MCC New York.

Plaintiff asserts that the testimony of Associate Warden Dowd at MCC New York provides circumstantial evidence that Hawkins gave Plaintiff a negative reference. Associate Warden Dowd, who did not speak to Hawkins, but who did conduct a reference check on

---

[1] The record does not contain Hawkins's actual responses to these questions either, though Ms. Johnson states that his answers were written down on a form. The Bureau of Prison's Report of Investigation states that the agency did not provide the actual reference forms. [Dkt. No. 44-7, at 7].

3

Plaintiff with Associate Warden Meeks at FCI Williamsburg, recalled that his impression of Plaintiff was that she was an average employee and that this was consistent with the reference information provided to him by Ms. Johnson. Plaintiff asserts that her evaluations, which she submitted as evidence, demonstrate that she was an above average employee, thus creating an issue of fact about "what actually happened regarding the voucher/reference process involving Plaintiff." Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [Dkt. No. 68, at 6]. However, Associate Warden Dowd's recollections about what Ms. Johnson and Associate Warden Meeks told him about Plaintiff are not sufficient to create a question of fact as to whether Hawkins gave Plaintiff a negative job reference. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to overcome summary judgment).

Ms. Johnson provided additional reasons why the selected candidates were chosen over Plaintiff. She stated that her decision to recommend another candidate, Mrs. Johns, was based on the fact that Mrs. Johns performed better in her interview than Plaintiff and was generally better qualified. Ms. Johnson also recalled that Mrs. John's supervisor rated her above average in all her current skills and abilities. As for the second position for which Plaintiff was rejected, Mrs. Johnson stated that the reason the winning candidate was chosen was because he was bilingual, he rated above average, and he was able to instruct specific classes that MCC New York wanted to offer. The fact remains that there is no evidence that Plaintiff was rejected for either position as a result of any action taken by Hawkins.

4

Plaintiff next objects to the Magistrate Judge's determination that Defendant presented a successful *Ellerth/Faragher* defense to Plaintiff's hostile work environment claim.[2] Plaintiff reasserts her arguments that Defendant's anti-harassment policy was not effective because employees only received 45 minutes of sexual harassment training per year and because the policy was not readily available to employees. The Magistrate Judge correctly determined that the mandatory, yearly training, which both Plaintiff and Defendant attended, was sufficient to provide guidance to employees on what was prohibited and how to report sexual harassment. Plaintiff's contention that the policy is not readily available to employees is not supported by the evidence. In fact, the policy is prominently displayed in employee break areas on anti-harassment notices and is also available on the Internet.

Plaintiff also reasserts her argument that the policy was not effective because Hawkins was able to enter the main building on several occasions after he had expressly been reassigned to an ancillary building following Plaintiff's sexual harassment allegations. Despite the fact that Hawkins came into the main building on several occasions after his reassignment, the Magistrate Judge noted that the policy was effective because Plaintiff suffered no more harassment after her complaint. In finding the policy effective, the Magistrate Judge also noted FCI Williamsburg's quick response to Plaintiff's allegations in ordering a threat assessment, making a formal referral to the Bureau of Prison Office of Internal Affairs for Investigation, removing Hawkins from supervisory control of the education department, and reassigning him to an ancillary building

---

[2] The *Ellerth/Faragher* defense allows an employer to avoid strict liability under Title VII for a supervisor's sexual harassment of an employee if no tangible action was taken against the employee and the employer can establish that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior and . . . that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid such harm otherwise." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 - 67 (4th Cir. 2001).

away from the main building where Plaintiff worked.  For these reasons, Plaintiff cannot show that the policy was ineffective.

Finally, Plaintiff objects to the Magistrate Judge's finding that Plaintiff unreasonably failed to take advantage of preventative and corrective opportunities when the harassment first occurred.  Plaintiff asserts that she felt that it would have been futile to report Hawkins's behavior to his supervisor, Associate Warden Meeks, because she and several other employees believed that the two men were friends who would protect each other.  As the Magistrate Judge correctly determined, Plaintiff cannot defend her decision to avoid making a complaint because of her belief that Hawkins was friends with his superiors.  *See Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001) ("We cannot accept the argument that reporting sexual harassment is rendered futile merely because members of the management team happen to be friends.").  Plaintiff also cannot defend her delay in reporting on the assertion that she believed Associate Warden Meeks had previously dismissed another employee's allegations of harassment.  "An employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer."  *Id*. *at* 268.  Additionally, Plaintiff cannot defend her decision to delay reporting the harassment because she feared that she would not get a good reference for the MCC New York positions.  Subjective fears of retaliation do not "alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."  *Id*. at 269 (internal citations omitted).

**CONCLUSION**

For the foregoing reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Dkt. No. 67] and **GRANTS** Defendant's Motion for Summary Judgment [Dkt. No. 44].

**IT IS SO ORDERED.**

United States District Court Judge

March 4, 2013
Florence, South Carolina

7